## HOWER v. MISSOURI PAC. R. CO.
### No. 4388.

Court of Appeal of Louisiana. Second Circuit.

Dec. 16, 1932.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellant.

Geo. Wesley Smith, of Rayville, for appellee.

McGREGOR, J.

This is a suit by the plaintiff for $250 damages for the killing of two mules by the de-

fendant railroad company on the night of November 27, 1930. In his petition the plaintiff alleges that the mules were killed at a private crossing between Gilbert and Wisner, in Franklin parish. It is alleged that at the point where the accident occurred the track is straight and that the operators of the train should have seen them in time to have slowed down and avoided killing them. The specific acts of negligence alleged are that the operators of the train either through carelessness or negligence failed to see the mules in time to avoid killing them, or having seen them as they should, they carelessly or negligently failed to sound any stock alarm or to slow down the train to give the mules an opportunity to escape.

In its answer the defendant denied all the allegations of the petition, and specially averred that the accident occurred through no fault or negligence on its part.

At the trial in the lower court there was judgment in favor of the plaintiff in the sum of $165, with interest and costs, and the defendant has appealed.

### Opinion.

At the trial in the lower court the plaintiff and appellee produced two witnesses, himself and Fred Benjamin, a tenant of his who lives just a few yards from the scene of the accident. The defendant and appellant likewise produced two witnesses, G. W. Ferrell, fireman of the locomotive that struck and killed the animals, and W. Moore, its section foreman. Of these four witnesses, only one was an eyewitness, G. W. Ferrell, the fireman.

The plaintiff's two witnesses testified to the condition of the two mules. It is an admitted fact that at the point where the mules were killed, the railroad track is perfectly straight for quite a distance. The railroad runs through the plaintiff's farm and is fenced. Plaintiff's tenant, Fred Benjamin, lives on the west side of the railroad near the scene of the accident. Close to his house there is a private crossing that leads over and into the main body of the plaintiff's farm on the east. This crossing intersects the defendant's railroad fence at two places, at which are placed two gates which are kept closed.

On the night of the accident Fred Benjamin drove the two mules across the track through these two gates into the plaintiff's field to graze and securely fastened both gates with wire. At about 11:30 or 11:40 o'clock that night, the defendant's northbound freight train passed that way and struck both mules, killing one instantly and injuring the other so that it died a few days thereafter.

The testimony of the plaintiff is that he was passing the scene of the accident early

the next morning and saw the defendant's section foreman in the act of burying the dead mule and found the injured mule under a shed where his tenant, Fred Benjamin, had put it when he discovered it on getting up from his bed.

It is the contention of the plaintiff in his testimony and of his counsel in his brief that the mules came upon the railroad track a short distance south of the crossing and ran north to reach this crossing in order to leave the track, and that if the train had slowed down they could and would have reached this place of safety. The only evidence offered to substantiate this claim is that plaintiff says he saw mule tracks for a distance of the length of three railroad rails. Fred Benjamin also says that he saw these same tracks.

On the other hand, G. W. Ferrell, the fireman, says that both mules approached the track from his, or the west, side "kinder at right angles," and that one of them succeeded in getting over to the engineer's side. It is his idea that they hit it about that time. The plaintiff- says that the mule tracks indicate that they ran down the track a distance of three rail lengths. Both can be correct, for it would require but an instant of time for the mules to travel that distance. In any event, from the time that the mules were revealed by the headlight of the locomotive until they were struck it was impossible to bring the train to a stop or to slow it down sufficiently to avoid striking them. According to Ferrell's testimony, just as soon as the mules could be and were seen, he started the bell ringing and gave the alarm to the engineer, who instantly put on the air brakes, sounded the stock alarm with his whistle, and opened the side steam valves of the cylinder. This is all that could be required of the defendant.

An effort is made to discredit the testimony of the fireman, but we cannot agree with plaintiff's position in regard to this matter. Fred Benjamin, plaintiff's tenant, testified that he had gone to bed and was asleep when the accident occurred. We do not know how sound asleep he was, but the probabilities are that he was hard to waken. But even so, he did wake up and he did hear "one toot" of the whistle and the escaping of the steam through the open valves. He did not wake up sufficiently to get up and see what the trouble was. The next morning he got up and found one dead mule and one injured.

It is testified by both the plaintiff's witnesses that the mules got into the narrow right of way through the gate on the east leading out of the plaintiff's field, and not over the fence. This is sufficient proof that the fence was good. Since the track was fenced and since the entry of the mules was through the gate which plaintiff, and not the defendant, had the duty of keeping shut, in order for the plaintiff to recover he must establish the negligence that he has charged. A careful reading and study of the evidence convinces us that he has not discharged that burden.

In his petition the plaintiff alleges that the operators of the train did not sound any stock alarm and did not slow the train down, but that without any slackening of speed, the train, while running at a rate of forty miles per hour, struck the mules. The testimony is to the contrary. Defendant's fireman swears that the train was running at a rate not to exceed twenty-five miles to twenty-seven miles per hour, and that the bell was ringing, the whistle was blowing, the steam was escaping, and the brakes were screeching. In spite of all this the mules were struck. We cannot refuse to accept the testimony of this witness. It is true he is an employee of the defendant, but that does not disqualify him. His testimony bears all the earmarks of the truth, and certainly his interest is no greater than that of the plaintiff and his tenant.

The only conclusion that we can reach in this matter is that the operators of the train were without negligence. The track was fenced and was supposed to be free of all stock. The mules were discovered as soon as it was possible to see them. As soon as they were seen, the operators of the train did everything that was humanly possible to avoid striking them.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be and the same is hereby reversed, annulled, and set aside, and it is now ordered that there be judgment in favor of the defendant dismissing plaintiff's suit and rejecting his demand; with the costs of both courts to be paid by the plaintiff.